UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| SHADAVIAN YARD-DANIEL, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:24-cv-00413-JPH-MG |
| | ) | |
| PRETORIOUS Warden, | ) | |
| | ) | |
| Respondent. | ) | |

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND DIRECTING ENTRY OF FINAL JUDGMENT**

Shadavian Yard-Daniel's petition for a writ of habeas corpus seeks relief

from his conviction and sanctions in prison disciplinary case ISF-24-03-0561.

For the following reasons, his petition is **denied**, and this action is **dismissed**

**with prejudice**.

## I. Overview

Prisoners in Indiana custody may not be deprived of good-time credits or

of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271,

274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see*

*also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process

requirement is satisfied with: 1) the issuance of at least 24 hours advance written

notice of the charge; 2) a limited opportunity to call witnesses and present

evidence to an impartial decision-maker; 3) a written statement articulating the

reasons for the disciplinary action and the evidence justifying it; and 4) "some

evidence in the record" to support the finding of guilt.  *Superintendent, Mass.*

*Corr. Inst. v. Hill,* 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

## II. The Disciplinary Proceeding

On March 6, 2024, Correctional Officer J. Norris wrote a conduct report in case ISF 24-03-561, stating:

> On 3/5/2024 at approx. 19:30 pm I officer Norris was conducting a pat search on II Shadavian yard-Daniel 228315 in the B-side Dayroom. From my training and experience with the IDOC While conducting the pat search On II shadavian I officer Norris confiscated a white folded paper with pieces of chemically soaked paper inside. II Shadavian was identified by his state issued ID and informed of this conduct report.

Dkt. 9-1 (errors in original).

Officer Norris completed a notice of confiscated property form, which Mr. Yard-Daniel refused to sign. Dkt. 9-2. On March 18, 2024, the screening officer notified Mr. Yard-Daniel of the charge B-231, intoxicants, and provided Mr. Yard-Daniel with a copy of the conduct report and the disciplinary hearing notice (screening report). Dkt. 9-4. The screening officer recorded that Mr. Yard-Daniel pled not guilty. *Id.* Mr. Yard-Daniel requested Officer Royer as a witness. *Id.* He also requested that the paper be tested. *Id.*

On April 8, Evidence Technician K. Nauman examined the confiscated paper. Dkt. 9-3. He determined that, based on his training and experience, the paper was "consistent with paper or an organic substance treated with a chemical for the purpose of creating a smokable or ingestible intoxicant." *Id.* He based his conclusion on (1) the paper was packaged in a manner consistent with previously identified chemically treated paper or substance; (2) the item

2

contained paper slivers consistent with chemically treated paper; and (3) based on the conduct report, the item was found/concealed on the offender in a manner consistent with contraband. *Id.*

The disciplinary hearing officer (DHO) held Mr. Yard-Daniel's hearing on April 17. Dkt. 9-6. At his hearing, Mr. Yard-Daniel stated, "Norris never touched me. The other officer was about to roll my sock up when Norris stopped him and point to what was in my sock. The officer grabbed it and rolled it in his glove." *Id.*

Mr. Yard-Daniel asked Officer Royer to be a witness, and she provided a witness statement explaining that she was not at the facility when the incident took place. Dkt. 9-8. Mr. Yard-Daniel asked the DHO to review the camera during the hearing to confirm his comments. The DHO described the camera footage as showing Officer Norris take the white paper from Mr. Yard-Daniel's sock and give it to a nearby officer to wrap in his glove. Dkt. 9-6.[1]

The DHO relied on the witness statement, Evidence Technician's report, conduct report, confiscation slip, and Mr. Yard-Daniel's comments in finding him guilty. *Id.* The DHO imposed sanctions of a credit class demotion and a 90-day loss of earned credit time. *Id.*

Mr. Yard-Daniel's appeals were denied. This habeas action followed.

### III. Discussion

Mr. Yard-Daniel's claims are summarized as: (1) Indiana Department of Correction (IDOC) policies were violated: (2) he was denied a witness and

---

[1] The Court's review of the video footage is consistent with that of the DHO's.

evidence; (3) the DHO was not impartial; and (4) there was insufficient evidence. Dkt. 2 at 3-4.

Respondent first argues that Mr. Yard-Daniel failed to exhaust all his claims. The Court concludes that it is more efficient to consider the claims on the merits than to review the issue of exhaustion. *See Washington v. Boughton*, 884 F.3d 692, 698 (7th Cir. 2018).

### A. IDOC Policy Violations

Mr. Yard-Daneil first argues that the hearing was not timely because it was postponed several times. He also alleges that the conduct report did not state that there was another individual/witness present during the search. These do not state a cognizable claim for habeas relief because they are based on alleged violations of IDOC policy. *Estelle v. McGuire*, 502 U.S. 62, 68 at n.2 (1991) ("state-law violations provide no basis for federal habeas review."); *Keller v. Donahue,* 2008 WL 822255, 271 Fed. Appx. 531, 532 (7th Cir. Mar. 27, 2008) (an inmate "has no cognizable claim arising from the prison's application of its regulations."). These claims are denied.

### B. Denial of Witness/Evidence

Next, Mr. Yard-Daniel contends that he was denied a witness statement and testing of the paper. Due process affords an inmate in a disciplinary proceeding a limited right to present "evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 566. But due process is not violated unless the inmate

4

is deprived of an opportunity to present material, exculpatory evidence. *See Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003).

Mr. Yard-Daniel requested Officer Royer as a witness, and she was contacted. She was told that Mr. Yard-Daniel said she helps with March Madness slips and saw the incident. Dkt. 9-8. In response, she stated in an email that she was *not* in the facility on the day of the incident but that she did sometimes make copies of things for him if he turns in a remittance slip. *Id.* Mr. Yard-Daniel fails to explain how this amounts to the denial of any material, exculpatory witness.

As to his alleged denial of testing, "[p]rison administrators are not obligated to create favorable evidence or produce evidence they do not have." *Manley v. Butts*, 699 F. App'x 574, 576 (7th Cir. 2017). In this case, there were other reasonable means of determining whether the paper was an intoxicating substance. The opinion of investigating officers, based on their experience and training, is "evidence." *See Ellison*, 820 F.3d 271 at 275 (chemical testing is superfluous if correctional officer testifies that contraband is a controlled substance based on his training and experience); *Hunt v. Benefiel,* No. 2:21-cv-00404-JPH-DLP, 2022 WL 4925027, *5 (S.D. Ind. Oct. 4, 2022) ("IDOC correctional officers may offer testimony based on their experience in that role, which requires them to recognize characteristics of intoxication, and to even further, identify illegal substances and contraband. The officers' professional experience is, at a minimum, 'some evidence' that the DHO could consider."). Evidence Technician Nauman's opinion, based on his training and experience,

is sufficient evidence and Mr. Yard-Daniel was not entitled to additional testing. These claims fail.

### C.  Impartial Decisionmaker

Mr. Yard-Daniel contends that the DHO was biased and made a "rush to judgment." Dkt. 2 at 4. Hearing officers "are entitled to a presumption of honesty and integrity" absent clear evidence to the contrary. *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003); *Perotti v. Marberry*, 355 F. App'x 39, 43 (7th Cir. 2009) (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). Indeed, "the constitutional standard for impermissible bias is high," and hearing officers "are not deemed biased simply because they presided over a prisoner's previous disciplinary proceeding" or because they are employed by the IDOC. *Piggie*, 342 F.3d at 666. Instead, hearing officers are impermissibly biased when, for example, they are "directly or substantially involved in the factual events underlying the disciplinary charges, or in the investigation thereof." *Id.* at 667. Another possible example of bias is if the DHO were found to have an intimate relationship with a crucial witness in the case. *See Eads vs. Hanks*, 280 F.3d 728, 729 (7th Cir. 2002). However, none of those circumstances are alleged here. Mr. Yard-Daniel does not allege that the DHO was involved in the incident or the investigation thereof, nor that he had an inappropriate relationship with a witness. Rather than "rush to judgment," in fact, the DHO granted Mr. Yard-Daniel's request to review the video at the hearing. There is no clear evidence of bias. The presumption that the DHO was not biased prevails.

### D. Some Evidence

For his final claim, Mr. Yard-Daniel argues that there was insufficient evidence because the paper was not field tested. Dkt. 2 at 3; dkt. 13 at 5-6. In a prison disciplinary proceeding, the "hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274. The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). "[T]he relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455–56 (emphasis added); *see also Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) (same).

Once the Court finds "some evidence" supporting the disciplinary conviction, the inquiry ends. *Jones v. Cross*, 637 F.3d 841, 849 (7th Cir. 2011). The Court may not "reweigh the evidence underlying the hearing officer's decision" or "look to see if other record evidence supports a contrary finding." *Rhoiney*, 723 F. App'x at 348 (citing *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000)).

As discussed above, an officer's "training and experience" is sufficient to determine that a substance is intoxicating. In addition, Mr. Yard-Daniel was not entitled to demand additional testing. The conduct report and the Evidence Technician's report were enough to satisfy the low evidentiary threshold in this case.

## IV.  Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of government." *Wolff*, 418 U.S. at 558.  There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Mr. Yard-Daniel to the relief he seeks. Accordingly, Mr. Yard-Daniel's petition for a writ of habeas corpus must be **denied** and the action **dismissed with prejudice.** Judgment consistent with this Order shall now issue.

Mr. Yard-Daniels' motion for case status, dkt. [15], is **granted** to the extent the Court issues this ruling.

**SO ORDERED.**

Date: 5/6/2026

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

SHADAVIAN YARD-DANIEL
228315
PUTNAMVILLE - CF
PUTNAMVILLE CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Natalie Faye Weiss
INDIANA ATTORNEY GENERAL
natalie.weiss@atg.in.gov